JOHN H. JACKSON vs. SAMUEL J. ESTEN and another.

Knox.    Opinion January 23, 1891.

*Real Action. Levy. Amendment. Fraudulent Conveyance. Bona Fide Purchaser.*

In a writ of entry both parties claimed to derive title from Elisha Brown; the plaintiff by a series of quit-claim deeds originating with Brown, and the defendants by a warranty deed from the grantee of six levying creditors of Brown. The levies were defective: one because it did not appear with certainty that the debtor, whose estate was taken, selected one of the appraisers, or was notified and neglected so to do; and the other because made as upon land held by the debtor in fee simple and in severalty and no reason assigned for levying on an undivided share instead of levying on a portion by metes and bounds. The defendants offered evidence to impeach the plaintiff's title as acquired in fraud of creditors; and also filed a petition from the officer who made the levies asking to supply the omissions named by amendments to the returns. *Held*: that such amendments are to be allowed or disallowed, as may best tend to the furtherance of justice. They may be permitted, irrespective of the time which has elapsed, provided they are clearly in conformity with the facts, and do not prejudice the rights of third persons acquired *bona fide* without notice.

Unless the equities of the applicant are superior to those of the contestant, the court will refuse to interpose to make that valid which was before invalid. They are properly allowable against the execution debtor himself, and his fraudulent grantee and all those deriving title from him, and standing in no better condition in equity.

The defendants should be permitted to impeach the plaintiff's title; and if the jury find that the original conveyance from Brown was fraudulent as to creditors, and that the plaintiff was not a *bona fide* purchaser for value, without notice of the fraud, the proposed amendments, being satisfactorily shown to be in conformity with the truth, are to be allowed and regarded as made. Otherwise not.

(See *Morse* v. *Sleeper*, 58 Maine, 329.)

ON REPORT.

The case is sufficiently stated in the opinion.

*J. E. Moore*, for plaintiff.

*J. O. Robinson and J. F. Libby*, for defendants.

WHITEHOUSE, J.    Writ of entry to recover two thousand one hundred and ninety-three two thousand two hundred and sixty-five thousandths parts of a piece of real estate known as the "Owl's Head Stand," in South Thomaston. Both parties claim to derive

title from Elisha Brown. The demandant seeks to establish his title by virtue of the following deeds duly recorded, viz: quit-claim deed from Elisha Brown to Isaac Tolman, 3d, dated October 12, 1855, consideration, ten thousand dollars; quit-claim deed from Tolman to Joseph Jackson, dated December 10, 1858, consideration six hundred dollars; warranty deed of one-fifth of premises from Joseph Jackson to Mary C. Carver, November 14, 1872, and deed of same from Mary C. Carver, to the demandant August 13, 1873; quit-claim deed of the entire premises from Joseph Jackson to the demandant September 4, 1875, consideration one hundred dollars; also deed of same premises from Joseph Williamson, assignee in bankruptcy of Joseph Jackson to Geo. E. Wallace, September 4, 1875, consideration ten dollars, and deed from Wallace to the demandant September 6, 1875, consideration ten dollars.

The tenants claim under a warranty deed from Jeremiah Sleeper who holds conveyances from seven different levying creditors of Elisha Brown.

The validity of these seven levies was brought directly in question in the case of *Morse* v. *Sleeper*, 58 Maine, 329. That of Sidelinger only, on seventy-two two thousand two hundred and sixty-fifths of the property was found to be valid. With respect to the other the court say: "Of the seven levies, under which the tenant claims title in himself, five were made November 21, 1856, as upon land held by the debtor, Brown, in fee simple, and in severalty, and no reason is assigned in either of them for levying upon an undivided share instead of making the levy upon a portion of the property by metes and bounds. It is essential to the validity of such a levy, under c. 94, § 13, R. S., 1841, that it should appear therein, that the premises to be levied on could not be divided without damage to the whole. *Mansfield* v. *Jack*, 24 Maine, 98. The omission must be held fatal to these five levies."

But the levy in favor of Hammond against Brown and others, was held defective, because it did not appear with certainty that the debtor whose estate was taken, selected one of the appraisers, or was notified to choose one and neglected.

The question of the validity of these levies having thus been once tried and determined by a court of competent jurisdiction, the judgment is conclusive between the parties and their privies. *Sibley* v. *Rider*, 54 Maine, 463.

Thereupon, the officer who made the levies, files a petition in this court asking for leave to amend his returns on the executions by inserting, in that of the last named levy, the statement that one of the appraisers was in fact chosen by Elisha Brown whose estate was taken; and by reciting in the other returns, the following, viz : "And being of opinion that the said real estate can not be divided without damage to the whole, and the same being more than sufficient to satisfy this execution;" averring the amendments to be in accordance with the truth.

It will be seen that the deed from Elisha Brown to Isaac Tolman, 3d, in which the demandant's title originates, bears date prior to any of the attachments which ripened into these different levies. But the defendants contend that the conveyance to Tolman was unquestionably made to hinder, delay and defraud the creditors of Brown ; and that the demandant himself is not an innocent purchaser for value, and stands in no better condition than Brown's fraudulent grantee. And they offer evidence in support of this contention.

The questions now presented for the determination of the court are, therefore, the justice and propriety of allowing the defective levies to be amended as proposed, and the admissibility and effect of the evidence offered by the tenants.

The broad principle regulating amendments of the character above-described is familiar and easily stated. It is commonly said that they are to be allowed or disallowed " as may best tend to the furtherance of justice." *Johnson* v. *Day*, 17 Pick. 106 ; *Hobart* v. *Bennett*, 77 Maine, 401 ; *Hayford* v. *Everett*, 68 Maine, 505. But this does not purport to be a statement of a definite rule, which may serve as a practical guide in particular cases, but only the declaration of an evident truth comprising other subordinate truths. It is an obviously sound, general principle from which more specific rules may be derived. The practice illustrated by the authorities seems to permit such

amendments, irrespective of the time which has elapsed, provided the amendment is clearly in conformity with the facts and does not prejudice the rights of third persons acquired *bona fide* without notice. But where the record of the extent does not show that it was valid, and strangers have in good faith, for a valuable consideration, become vested with the title, their equity is equal to that of the creditor. And unless the equities of the applicant are superior to those of the contestant, the court will refuse to interpose to make that valid which was before invalid. Freeman on Executions § § 360, and 388, and authorities cited. An officer's return of a levy can not be amended according to the facts after having been recorded, if the rights of intervening *bona fide* purchasers are thereby impaired. *Boynton* v. *Grant* 52 Maine, 220 ; *Lumbert* v. *Hill*, 41 Maine, 482. No amendment of an officer's return should be permitted when such amendment would destroy or lessen the rights of third persons, acquired *bona fide*, and without notice by the record or otherwise. *Fairfield* v. *Paine*, 23 Maine, 498.

It is true that the doctrine laid down in *Whittier* v. *Varney*, 10 N. H. 291, has been frequently invoked, in this and other states, as authority for permitting certain amendments to the record of levies even as against *bona fide* purchasers for value. *Peaks* v. *Gifford*, 78 Maine, 362, and cases cited. The rule in *Whittier* v. *Varney*, is thus stated : "The subsequent purchaser or creditor being chargeable with constructive notice of what is contained in the record, if he has there sufficient to show him that all the requisitions of the statute have probably been complied with, and he will, notwithstanding, attempt to procure a title, under the debtor, he should stand chargeable with notice of all facts, the existence of which is indicated and rendered probable by what is stated in the record, and the existence of which can be satisfactorily shown to the court. And in such cases amendments should be allowed, notwithstanding the intervening interests of such purchaser or creditor. . . .
But, if there is an entire omission of anything in the return to indicate that some particular requisition of the statute has been complied with, and there is thus nothing to amend by,—as, for

instance, if there is nothing tending to show that the appraisers had been sworn, or that the debtor had notice where he was entitled to it,— subsequent purchasers, or creditors, have good right to regard such omission as evidence of a fatal defect."

It is important to observe, however, that in this case the jury had found for the plaintiff on an issue of fraudulent collusion between the defendant and his father. It will be found, too, that all the cases in this state, in which an amendment has been allowed against an intervening purchaser for a valuable consideration without notice, are readily distinguishable from the case at bar, either in respect to the character of the omission and the nature of the amendment, or other material points affecting the equities of the parties.

But all the authorities agree that the amendments here proposed are properly allowable against the execution debtor himself, and all those deriving title from him and standing in no better condition in equity. In *Glidden* v. *Philbrick*, 56 Maine, 222, the court say : "If the conveyance under which the demandant derives his title is fraudulent and void as to creditors, the grantee can not expect that the law will protect his claim. He can be in no better condition than his fraudulent grantor. An amendment, which would be allowable against his grantor, should be equally permitted as against him. The deed, under which the demandant claims title, is long prior in time to the levy of the tenant. Being prior in time, if *bona fide*, it must prevail, whether the levy is good. or bad. An amendment in such case could have no effect. If the deed was fraudulent, the creditors of the fraudulent grantor should be permitted to impeach it. The amendment, therefore, should be allowed as against the judgment debtor and against his fraudulent grantee. Such grantee, and all deriving their title from him, with notice of the fraudulent conveyance, should stand in no better condition than the judgment debtor through whom they claim." See also *Marston* v. *Marston*, 54 Maine, 476 ; *Wellington* v. *Fuller*, 38 Maine, 61. In the last named case the court say : "The levy is defective, but as the rights of the creditors are to be preferred to those of Gifford, and of all claiming under him with notice of this defec-

tive title, the officer may have leave to amend his return in accordance with the facts."

With respect to the demandant's title, the language of the court in *Morse* v. *Sleeper, supra,* is equally applicable to the evidence now introduced and offered : "The proof is plenary and uncontradicted," say the court, "that the conveyance from Brown and Tolman, whose title Jackson holds, was made for the express purpose of delaying and defrauding creditors. . . It may be worthy of remark that, the deed from Tolman to Jackson is a mere quit-claim of his (Tolman's) right, title and interest, made upon a nominal consideration which contrasts strangely with that named in the two deeds from Brown to Tolman, and that there is no evidence that either Tolman or Jackson ever had any possession under these conveyances of the Owl's Head Stand, which would seem to have passed from the possession of Brown into that of the levying creditors. Tolman's deed to Jackson does not purport to convey the land, but only the right, title and interest of the grantor in it, and that (upon the testimony here presented) was the right, title and interest of a fraudulent grantee. If the tenant held Jackson's title as well as his own, it would certainly be incumbent on him at least to show a purchase by Jackson in good faith, for value without notice, when the first link in the chain is invalidated by fraud."

Our conclusion, therefore, is that the tenants in possession representing the levying creditors, and holding under a warranty deed for a valuable consideration, should be permitted to impeach the title of the demandant ; and that the evidence reported which is material to that issue, and otherwise admissible under the rules of evidence, would authorize a jury to find that the original conveyance from Brown to Tolman was fraudulent as to the creditors of Brown ; that Tolman was cognizant of Brown's fraudulent design ; and that Joseph Jackson and the demandant were not *bona fide* purchasers, for a valuable consideration, without notice of the fraud. If such should be the finding of the jury, the amendments proposed, being satisfactorily shown to be in conformity with the truth, are to be allowed and

regarded as made. Otherwise the amendments are not to be allowed.

According to the stipulations in the report the entry must be,

*Action to stand for trial.*

PETERS, C. J., VIRGIN, LIBBEY, EMERY and FOSTER, JJ., concurred.